UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTWONE STOKES,<br><br>    Plaintiff,<br><br>  v.<br><br>SGT. COSTELLO,<br><br>    Defendant. | No. 2:24-cv-2413 CSK P<br><br>ORDER AND<br><br>FINDINGS & RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se. This civil rights action brought under 42 U.S.C. § 1983 proceeds on plaintiff's claim that on August 13, 2024, defendant Sgt. Costello used excessive force in violation of the Eighth Amendment. (ECF No. 10 at 1.) Defendant's fully briefed motion for summary judgment on exhaustion grounds is before the Court.

As set forth below, it is recommended that the motion for summary judgment be granted, and this action be dismissed without prejudice.

I.     BACKGROUND

On August 20, 2025, defendant Sgt. Costello filed a motion for summary judgment on the grounds that plaintiff failed to exhaust his administrative remedies prior to bringing the instant action. (ECF No. 25.) On September 11, 2025, plaintiff was granted a thirty day extension of time to file an opposition to the motion for summary judgment within thirty days. (ECF No. 27.) Plaintiff did not file an opposition by October 11, 2025. On October 20, 2025, the Court ordered

1

plaintiff to file an opposition within twenty-one days. (ECF No. 30.) However, defense counsel received an opposition from plaintiff on October 20, 2025, which the Court filed on behalf of plaintiff. (ECF No. 31.) On October 30, 2025, plaintiff filed an opposition with the Court. (ECF No. 32.) On November 3, 2025, defendant filed a reply to both oppositions. (ECF No. 33.)

II.   DEFENDANT'S SUMMARY JUDGMENT MOTION

   A. Legal Standards for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).) "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

///

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled on other grounds as stated in Flood v. Miller, 35 F. App'x 701, 703 n.3 (9th Cir. 2002).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's notes to 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). A verified complaint may be considered as evidence at the summary judgment stage "if it is based on personal knowledge and if it sets forth the requisite facts with specificity." Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing

3

1  party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and
2  it is the opposing party's obligation to produce a factual predicate from which the inference may
3  be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),
4  aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing
5  party "must do more than simply show that there is some metaphysical doubt as to the material
6  facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the
7  nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation
8  omitted).

9       By notice filed on August 20, 2025, plaintiff was advised of the requirements for opposing
10 a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (ECF No. 25-1
11 (citing Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th
12 Cir. 1998) (en banc)).).

13     B. Facts[1]

14     1. During all relevant times, plaintiff was an inmate in the custody of the California
15 Department of Corrections and Rehabilitation ("CDCR"); at the time of the incident at issue,
16 plaintiff was housed at California State Prison, Sacramento ("SAC").  (ECF No. 1; Pl.'s Dep. at
17 10-11.)

18     2. Defendant Costello was a sergeant at SAC on August 13, 2024, the date of the incident
19 at issue herein.  (ECF No. 1.)

20     3. Plaintiff filed his original § 1983 complaint on September 5, 2024.  (ECF No. 1 at 1.)
21 The complaint was not accompanied by a proof of service, but the complaint was signed by
22 plaintiff on August 31, 2024.  (Id. at 6.)

23     4. On August 14, 2024, plaintiff timely submitted Grievance Log No. SAC 610141,
24 which complained that defendant Sgt. Costello placed plaintiff in handcuffs that were too tight on
25 August 13, 2024.  (ECF No. 25-3 at 9-12.)  The Institutional Office of Grievances ("OOG")

---

[1] The Court finds these facts undisputed for purposes of summary judgment, unless otherwise noted.

4

mailed plaintiff a "Grievance Receipt Acknowledgment," dated August 16, 2024, noting the grievance was received and assigned for review and response, and that the review would be completed no later than October 16, 2024. (ECF No. 25-3 at 3, 13.) Plaintiff admits the August 16, 2024 grievance receipt was received on August 26, 2024. (ECF Nos. 31 at 3; 32 at 2.)

5. Defendant provided a copy of the OOG's decision denying the grievance, dated October 5, 2024, within the 60 day time frame under Title 15 § 3483(g). (ECF No. 25-3 at 3, 14-18.) The OOG's response stated, "If you are dissatisfied with the decision of this claim, you may appeal this decision by mailing a CDCR Form 602-2 to the Office of Appeals." (Id. at 17.) Plaintiff contends the denial was received on August 26, 2024. (ECF Nos. 31 at 3, 32 at 2.)

6. Between August 13, 2024 (the date of the incident) and September 1, 2024 the date the complaint was filed), the Office of Appeals ("OOA") records reflect no appeals by plaintiff alleging that Sgt. Costello used excessive force against plaintiff on August 13, 2024. (ECF No. 25-3 at 3, 5-6.) Plaintiff claims the denied grievance, Grievance Log No. SAC 610141, was mailed to the OOA on August 29, 2024, citing issues with institutional mail. (ECF Nos. 31 at 3, 32 at 2.)

C. Exhaustion Standards

It is well established that the Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust available administrative remedies before bringing a federal civil rights action. See 42 U.S.C. § 1997e(a); Ross v. Blake, 578 U.S. 632, 638-39 (2016); Jones v. Bock, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002) (internal quotation marks omitted) (citing Porter v. Nussle, 534 U.S. 516, 532 (2002) (exhaustion requirement applies to all prisoner suits relating to prison life)). "[A] prisoner must 'complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court.'" Harvey v. Jordan, 605 F.3d 681, 683 (9th Cir. 2010) (quoting Marella v. Terhune, 568

F.3d 1024, 1027 (9th Cir. 2009)). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." Booth v. Churner, 568 F.3d 1024, 736, 741 (2001); Ross, 578 U.S. at 640, 642-43. An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

"Nonexhaustion" is an affirmative defense, and the defendant has the burden of "prov[ing] that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino v. Baca, 747 F.3d 1162, 1171-72 (9th Cir. 2014). A remedy is "available" where it is "capable of use; at hand." Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting Albino, 747 F.3d at 1171). Grievance procedures that do not allow for all types of relief sought are still "available" as long as the procedures may afford "some relief." Booth, 532 U.S. at 738. If a defendant meets the initial burden, a plaintiff then must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino, 747 F.3d at 1172. The Supreme Court identified three circumstances where administrative remedies are effectively unavailable:

> (1) when (despite what regulations or guidance materials may promise) it operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) if it is "so opaque that it becomes, practically speaking, incapable of use; and (3) when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

Fordley v. Lizarraga, 18 F.4th 344, 351 (9th Cir. 2021) (internal quotation marks omitted) (citing Ross, 578 U.S. at 642-44). "[T]he ultimate burden of proof," remains with the defendants. Albino, 747 F.3d at 1172-73. Only "[i]f the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, [is] a defendant is entitled to summary judgment under Rule 56." Id. at 1166.

D. California's Inmate Appeal Process

"[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper

6

exhaustion." Reyes v. Smith, 810 F.3d 654, 657 (9th Cir. 2016) (quoting Jones, 549 U.S. at 218). In order to exhaust, the prisoner is required to complete the administrative review process in accordance with the prison's procedures. Woodford, 548 U.S. at 90. In California, inmate grievances are subject to two levels of review. See Cal. Code Regs. tit. 15, §§ 3481(a).[2] At the first level, the inmate submits his claim on a CDCR Form 602-1 to the Institutional Office of Grievances at the prison where the inmate is housed. Id. § 3482(a)(1), (c). Inmates must submit a claim within 60 calendar days of discovering the claim. 15 Cal. Code Regs. § 3482(b). In the Form 602-1, the inmate is required to "describe all information known and available to the [inmate] regarding the claim, including key dates and times, names and titles of all involved staff members (or a description of those staff members), and names and titles of all witnesses, to the best of the [inmate's] knowledge." Id. § 3482(c)(2). "In response, [the inmate] shall receive a written decision" from the Institutional Office of Grievances "clearly explaining the reasoning for the decision in each claim." Id. § 3481(a). This written decision, referred to as a first level decision, generally does not exhaust administrative remedies. Id. § 3483(l).

    If an inmate is dissatisfied with the first level decision, the inmate may appeal the decision to the second level by submitting a CDCR Form 602-2 to the CDCR's Office of Appeals in Sacramento within 60 days of receiving the first level decision. Id. §§ 3481(a), 3484(a), (c). Adding new claims during the appeals process that were not presented in the original grievance does not serve to exhaust administrative remedies as to any new claims. Id. §§ 3484(d), 3485(e). The OOA shall ensure that a written decision is completed no later than 60 calendar days after receipt of the grievance. Id. § 3485(g). The written decision shall clearly explain the reasoning for the decision in each claim. Id. § 3481(a). A written decision containing one of the following decisions: "denied," "granted," "no jurisdiction," "identified as staff misconduct," "pending legal matter," or "time expired," constitutes exhaustion of the administrative remedy process. Id. § 3485(l). If the inmate receives a written decision of "denied" by the OOA, as described in § 3485(g), the inmate has exhausted the administrative remedy because the OOA is the final level

---

[2] Beginning January 1, 2022, inmates are required to follow the procedures set forth in Title 15, §§ 3480-3485.

7

of review.  Id. § 3485(l).

When the OOA receives an appeal, it is assigned a tracking log number and entered into a computer system.  (ECF No. 25-3 at 2.)  An "Appeal History Report" is available in the computer system for each prisoner.  (Id.)  Each "Appeal History Report" contains the prisoner's first and last name, CDCR number, the appeal log number, the appeal issue, the date the appeal was received, the underlying grievance log number (if any), the date the appeal was closed, and the final disposition of the appeal.[3]  (Id.)  The "Appeal History Report" includes appeals that are accepted as well as those that are rejected or screened out.  (Id.)

E. Discussion

   1. *Administrative Remedies Were Available*

In the complaint, plaintiff agreed that there were administrative remedies available at the institution.  (ECF No. 1 at 3.)  In deposition, plaintiff confirmed that plaintiff is aware of the administrative grievance process, knows plaintiff has to exhaust administrative remedies, and admitted plaintiff used the process often.  (Pl.'s Dep. at 13-15; ECF No. 25-4 at 20-22.)  It is undisputed that administrative remedies were available to plaintiff.

   2. *Plaintiff Timely Submitted First Level Grievance*

Plaintiff also declared in the complaint that plaintiff submitted a request for administrative relief, and appended a copy of the first two pages of Grievance Log No. SAC 610141, signed August 14, 2024.  (ECF No. 1 at 3, 7-8.)  The parties agree that Grievance Log No. SAC 610141 is the sole grievance complaining of Sgt. Costello's treatment of plaintiff on August 13, 2024.[4]  Three days later, the OOG wrote plaintiff a letter confirming receipt of Grievance Log No. SAC 610141, and informing plaintiff that the OOG would complete its review no later than October 16, 2024.  (ECF No. 25-3 at 13.)  Plaintiff's Appeal History Report confirms the OOG response:

---

[3] Although the Appeal History Report might list the OOG grievance log number, this report does not appear to list the date of the OOA denial.  (See, e.g., ECF. No. 25-3 at 5-7.)  Defendant provided a copy of the appeal denial issued in Grievance Log No. SAC 610141, which bears the date October 5, 2024.  (ECF No. 25-3 at 14.)

[4] A copy of the entire Grievance Log No. SAC 610141 can be found at ECF No. 25-3 at 9-12, and the OOG responses are at ECF No. 25-3 at 13-17.

"denied."  (ECF No. 25-3 at 5 (fifth line from the bottom of first page of report).)

### 3. Appeal Through the Second Level of Review

The issue here is whether plaintiff appealed Grievance Log No. SAC 610141 through the second level of review before plaintiff filed the instant complaint on September 5, 2025.  The Court finds that plaintiff did not.

In the complaint, plaintiff declared that plaintiff appealed the request for administrative relief to the highest level.  (ECF No. 1 at 3.)  The copy of the grievance provided by plaintiff only included the first two pages, bears no request for second level review, and does not contain a decision by the OOG or the OOA.  (Id. at 7-8.)  Plaintiff now argues the response denying Grievance Log No. SAC 610141 was received on August 26, 2024.  (ECF Nos. 31 at 3, 32 at 2.)  In the first opposition, plaintiff declares that on August 29, 2024, plaintiff mailed "the denied grievance involving Mr. Costello and placing [plaintiff] in too tight handcuffs and denying [plaintiff] water to the Office of Appeals, P.O. Box 942883, Sacramento, CA  95811."  (ECF No. 31 at 3.)  Plaintiff claims that by doing so, plaintiff exhausted all available remedies.  (Id. at 4.)  Plaintiff argues that the PLRA states that once plaintiff uses all available remedies despite the outcome, plaintiff's remedies were exhausted on August 29, 2024, once plaintiff put the grievance in the mail addressed to the OOA.  (Id. at 8.)  In the second opposition, plaintiff again denies the failure to exhaust defense, and reiterates that plaintiff mailed the appeal on August 29, 2024, and appears to suggest the appeal was lost in the mail based on issues with institutional mail.  (ECF No. 32 at 2.)  Plaintiff again declares that plaintiff exhausted all available remedies by mailing the denied Grievance Log. No. SAC 610141 "to the OOA as required when exhausting all remedies."  (ECF No. 32 at 4.)

On the other hand, defendant provided a copy of the response to Grievance Log No. SAC 610141, which did not issue until October 5, 2024.  (ECF No. 25-3 at 14.)  Defendant provided a copy of plaintiff's Appeal History Report that reflects the OOA did not receive an appeal of Grievance Log No. SAC 610141 or any other appeal referencing defendant Sgt. Costello's use of force on August 13, 2024.  (ECF No. 25-3 at 3, 5.)  Indeed, plaintiff's Appeal History Report shows no appeal received from plaintiff after August 29, 2024, until plaintiff's unrelated appeal in

1  Grievance Log No. NKSP 0587044 was received on October 11, 2024.  (ECF No. 25-3 at 5.)
2  Defendant argues it would be impossible for plaintiff to appeal a decision before that decision
3  issued, that plaintiff's self-serving allegations should be disregarded, and contends no jury could
4  believe plaintiff's account.  (ECF No. 33 at 4, 5.)

5  Aside from plaintiff's declaration, plaintiff fails to rebut with documentary evidence
6  defendant's documentary evidence that the OOA response to Grievance Log No. SAC 610141 did
7  not issue until October 5, 2024.  (ECF No. 25-3 at 14.)  For example, plaintiff did not provide a
8  copy of the form 602-2 setting forth why plaintiff was dissatisfied with the response to Grievance
9  Log No. SAC 610141 and requesting review at the second level.  Plaintiff also did not provide a
10  copy of the prison's mail log reflecting the alleged mailing of the denied grievance on August 29,
11  2024 to the OOA.

12  The Court agrees with defendant that it is not possible to appeal a decision that has not yet
13  issued.  But even assuming plaintiff mailed a denial to the OOA on August 29, 2024, the act of
14  mailing a denial does not exhaust administrative remedies, contrary to plaintiff's contention in his
15  oppositions.  Rather, the OOA must be permitted time to review and issue a written response to
16  the appeal.  "Courts have repeatedly held that, where the government still has time to respond to a
17  grievance, an as-yet-unanswered grievance is unexhausted."  Lucien v. Gonzalez-Gamez, 2024
18  WL 1023851, at *3 (N.D. Cal. Mar. 7, 2024) (citations omitted).  Here, plaintiff did not allow for
19  the 60 day response time by the OOA.  Instead, plaintiff mailed the complaint to this Court on or
20  about August 31, 2024, the date plaintiff signed the complaint, and only a few days after plaintiff
21  received the alleged denial of Grievance Log No. SAC 610141 on August 26, 2024.  (ECF No. 1
22  at 6.)

23  Thus, the Court is not required to hold a hearing under Albino, 747 F.3d 1152, so that the
24  court could resolve when plaintiff received the denial of Grievance Log No. SAC 610141 or
25  submitted the appeal.  Taking plaintiff's statements as true—that plaintiff received the appeal
26  response on August 26, 2024, and mailed the OOG denial to the OOA on August 29, 2024, and
27  liberally construing such mailing as a remedy request to which the OOA did not respond—the
28  record shows plaintiff signed the instant complaint on August 31, 2024.  This August 31, 2024

date demonstrates that plaintiff did not allow the OOA 60 days to respond before plaintiff mailed the complaint to this Court.  Because plaintiff did not wait the 60 day period to receive the OOA's decision before filing the instant complaint, the Court need not address issues with institutional mail.

Taking plaintiff's allegations as true, the record demonstrates that plaintiff filed the instant complaint before the OOA could respond.  Therefore, plaintiff failed to exhaust administrative remedies prior to filing this action.  See Lucien, 2024 WL 1023851, at *3.

### 4. Exhaustion Should Not Be Excused

As noted above, it is undisputed that administrative remedies were available to plaintiff.  In addition, in deposition, plaintiff admitted familiarity with, and use of, the administrative grievance process.  (Pl.'s Dep. at 13-15 (ECF No. 25-4 at 20-22).)  Defendant submitted plaintiff's Appeal History Report which confirms that from August 13, 2024, the date of the incident, to September 5, 2024, the date plaintiff filed the complaint, plaintiff submitted eight grievances.  (ECF No. 25-3 at 5-6.)  The records show plaintiff only appealed one of those grievances, Log No. SAC 0617253, but that appeal was received on October 16, 2024, outside the relevant time frame.  (Id. at 5.)  The Court finds plaintiff's failure to exhaust should not be excused.

### 5. Plaintiff Failed to Exhaust Available Administrative Remedies

For the above reasons, the undersigned finds that plaintiff failed to exhaust administrative remedies through the second level of review prior to filing the instant action, and plaintiff does not contend, for any reason, that administrative remedies were not available.  Thus, the motion for summary judgment should be granted, and this action should be dismissed based on plaintiff's failure to exhaust administrative remedies.

III.   CONCLUSION

The Court recommends that defendant's motion for summary judgment be granted, and this action be dismissed without prejudice.

In accordance with the above, IT IS HEREBY ORDERED that the Clerk of the Court is directed to assign a district judge to this case.

11

Further, IT IS RECOMMENDED that:

1. Defendant's motion for summary judgment (ECF No. 25) be granted.

2. This action be dismissed without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  November 21, 2025

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/stok2413.msj.fte